# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **IN RE: UNISYS CORPORATION** | : | **MDL DOCKET** |
| **RETIREE MEDICAL BENEFITS ERISA** | : | |
| **LITIGATION** | : | **NO. 969** |
| | | |
| **ADAIR, HARLEY, J., et al.** | : | **CIVIL ACTION** |
| | : | |
| **v.** | : | **NO. 03 - 3924** |
| | : | |
| **UNISYS CORPORATION** | : | |

## MEMORANDUM AND ORDER

**Kauffman, J.**                                                                                **July  16,  2007**

Now before the Court is the Report and Recommendation of United States Magistrate

Judge Thomas J. Rueter regarding the claims of 14 plaintiffs ("Trial Plaintiffs") in the above-

captioned action.[1]  Both Defendant Unisys Corporation ("Unisys") and Trial Plaintiffs have

submitted written Objections to the Report and Recommendation.  For the reasons that

follow, and after consideration of the written submissions of the parties, the Objections will

be denied, and the Report and Recommendation will be approved and adopted in part and

modified in part.[2]

_____

[1] These claims were severed for separate trial pursuant to Fed. R. Civ. P. 53 and a
Stipulation and Order dated July 15, 2005.  Trial Plaintiffs are Theodore Botzum, Mary
Castorani, Ernestine DiLoreto, Eugene Endress, Dennis Gallagher, Henry Geneva, Elihu
Ginsberg, Howard Hansell, Vernon Horshaw, Helen Peterman, Robert Schieman, Ruth Stringer,
Anne Walnut, and Thomas Yeager.

[2] "In acting on a master's order, report, or recommendations, the court must afford an
opportunity to be heard and may receive evidence, and may: adopt or affirm; modify; wholly or
partly reject or reverse; or resubmit to the master with instructions."  Fed. R. Civ. P. 53(g)(1).
"The requirement that the court must afford an opportunity to be heard can be satisfied by taking
written submissions when the court acts on the report without taking live testimony."  Fed. R.

I.      BACKGROUND

Trial Plaintiffs are individuals who retired from Unisys between 1987 and 1989, and who formerly were employed by a Unisys predecessor, the Burroughs Corporation.  They assert that Unisys breached its fiduciary duties under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 et seq.  Specifically, Trial Plaintiffs allege that Unisys (1) misrepresented that their retiree medical benefits were vested and could not change despite clauses in certain plan documents reserving the right to modify or terminate those benefits, and (2) failed adequately to advise them of that reserved right.

For many years, Trial Plaintiffs' claims were subsumed within a class action.  The history of that class action begins in September 1986, when the Sperry Corporation ("Sperry") and the Burroughs Corporation  ("Burroughs") merged to form Unisys.  Before the merger, Sperry and Burroughs had provided their retiring employees with post-retirement medical coverage at little or no cost to the retirees.  After the merger, Unisys continued the pre-existing medical benefit plans ("the predecessor plans") for Sperry and Burroughs retirees.

In 1989, Unisys created the Post-Retirement and Extended Disability Medical Plan ("the old plan") to cover all employees who retired after April 1, 1989, most of whom were former Sperry and Burroughs employees.  The predecessor plans continued to cover former employees who had retired before April 2, 1989.  On January 1, 1993, Unisys terminated both the predecessor plans and the old plan, and replaced them with the new Unisys Post-Retirement and Extended Disability Medical Plan ("the new plan").  The new plan, under

_____

Civ. P. 53 advisory committee's note on 2003 amendments.

which the retirees now are required to pay the full cost of their premiums, sharply contrasts with the old plan and the predecessor plans under which Unisys had paid most or all of the premiums.

As a result of this drastic cut in benefits, eight different lawsuits were filed against Unisys in several jurisdictions in 1992 and 1993. The Judicial Panel on Multidistrict Litigation transferred all lawsuits filed outside the Eastern District of Pennsylvania to this district for consolidated disposition. See 28 U.S.C. § 1407. On June 9, 1993, pursuant to stipulation of the parties and Federal Rule of Civil Procedure 23(b)(2), the Court (Cahn, C.J.) certified the class of approximately 21,000 former non-union employees of Sperry, Burroughs, and Unisys, divided into subclasses and subgroups.

The class members, in addition to claiming breach of fiduciary duty, also asserted breach of contract and estoppel claims. These claims eventually were dismissed on summary judgment. Judge Cahn found that the reservation of rights clauses in the plan documents barred the class members from claiming that they contractually were entitled to free or low-cost medical benefits for life, and the Third Circuit affirmed. In re: Unisys Corp. Retiree Med. Benefit ERISA Litig., 837 F. Supp. 670 (E.D. Pa. 1993), aff'd, 58 F.3d 896 (3d Cir. 1995).

In a related opinion, however, the Third Circuit held that the class members could maintain a claim for breach of fiduciary duty under ERISA § 502(a)(3)(B), 29 U.S.C. § 1132(a)(3)(B), despite the reservation clauses retaining the company's right to terminate the plans. In re: Unisys Corp. Retiree Med. Benefit ERISA Litig., 57 F.3d 1255 (3d Cir. 1995). Furthermore, the Court held that equitable relief was available under ERISA to individual plan participants who could prove a breach of fiduciary duty by showing one or both of the

3

following: (1) that Unisys representatives counseled them that they had lifetime medical benefits without making reference to the reservation of rights clause, even though the representatives were aware that many employees mistakenly understood such counsel to mean that such benefits became vested at the time of retirement, see id. at 1260-61; or (2) that Unisys representatives affirmatively represented to them that their medical benefits were guaranteed once they retired, when the company knew in fact that this was not true. See id. at 1266-67. The appeal dealt only with the claims of the Sperry retirees, but after the decision, the breach of fiduciary duty claims of all class members were reinstated. The Third Circuit remanded to the District Court to determine the breach of fiduciary claims.

On March 10, 1997, Judge Cahn granted summary judgment in Unisys's favor on the breach of fiduciary duty claims asserted by: (1) Plaintiffs who retired more than six years prior to the filing of the Complaint, because their claims were barred by the statute of limitations; and (2) Plaintiffs who left the company involuntarily, because they failed to establish detrimental reliance. In re: Unisys Corp. Retiree Med. Benefit ERISA Litig., 957 F. Supp. 628 (E.D. Pa. 1997). The Third Circuit, however, reversed and reinstated both sets of claims in March 2001. In re: Unisys Corp. Retiree Med. Benefit ERISA Litig., 242 F.3d 497 (3d Cir. 2001).

With respect to the retirees who had left the company early, the Third Circuit concluded that some individuals may have detrimentally relied on the alleged misrepresentations in reaching important life decisions made after their retirements. Thus, the Court reasoned, they may have timely claims depending upon the date and nature of their reliance. Id. at 506. With respect to the retirees who left the company involuntarily, the

Court held that they may have made important life decisions other than choosing to retire that could support a breach of fiduciary duty claim. Id. at 507-10.

After the Third Circuit's decision, Unisys moved to decertify the class. This Court granted the motion because, based on the Third Circuit's rulings, each individual plaintiff would need to demonstrate particularized proof that, for example, misrepresentations were made to him or her and that he or she detrimentally relied on the misrepresentations. In re: Unisys Corp. Retiree Med. Benefit ERISA Litig., 2003 U.S. Dist. LEXIS 1577, 29 Employee Benefits Cas. (BNA) 2473 (E.D. Pa. Feb. 4, 2003) (Kauffman, J.).[3]

Unisys has settled the majority of the claims against it, including the claims of all members of the Sperry sub-class. See Order and Final Judgment Approving Partial Settlement, dated January 24, 2003. In the wake of the decertification, however, hundreds of individual actions remained pending against Unisys. After attempts to settle those cases failed, the parties stipulated to sever and try the claims of Trial Plaintiffs. Pursuant to Fed. R. Civ. P. 53, the claims of Trial Plaintiffs were referred to Magistrate Judge Thomas J. Rueter to conduct a trial and issue a Report and Recommendation.

Magistrate Judge Rueter held a bench trial from October 17 to October 26, 2005. On September 29, 2006, after oral argument on questions of both law and fact, Magistrate Judge Rueter issued a 123-page Report and Recommendation. He found that 12 of the 14 Trial Plaintiffs had proven their breach of fiduciary duty claims and were entitled to an injunction

---

[3] On January 5, 1999, the Unisys class action was reassigned from the calendar of Judge Cahn to the calendar of this Court.

compelling Unisys to re-enroll them in a medical plan with the benefits they were assured they would continue to receive.[4]

---

[4] The Magistrate Judge found that Trial Plaintiffs Walnut and DiLoreto failed to meet their burden of proof with respect to detrimental reliance, a necessary element of their breach of fiduciary duty claims.

## II.    OBJECTIONS TO THE FINDINGS OF FACTS

Federal Rule of Civil Procedure 53(g) governs the parties' Objections to Magistrate

Judge Rueter's Report and Recommendation.  The Court must review the findings of fact <u>de</u>

<u>novo</u>, unless the parties stipulate that the "master's findings will be reviewed for clear error."

Fed. R. Civ. P. 53(g)(3)(A).  The parties in this case stipulated to a clear error standard of

review.  Stipulation and Order dated July 14, 2005.

The clear error standard of review is highly deferential.  Clear error exists only when

the fact finder's determination "either (1) is completely devoid of minimum evidentiary

support displaying some hue of credibility, or (2) bears no rational relationship to the

supportive evidentiary data."  <u>Haines v. Liggett Group, Inc.</u>, 975 F.2d 81, 92 (3d Cir. 1992)

(citations omitted).  Accordingly, the Court must give "all due deference to the opportunity of

the [magistrate] judge to evaluate the credibility of witnesses and to weigh the evidence," and

must not overturn a factual finding unless the Court is left with the "definite and firm

conviction that mistake has been committed."  <u>Commerce Nat'l Ins. Servs., Inc. v. Commerce</u>

<u>Ins. Agency, Inc.</u>, 214 F.3d 432, 435 n.1 (3d Cir. 2000).

After carefully reviewing the parties' Objections, the Court finds that neither side has

shown clear error in the factual findings.  Magistrate Judge Rueter's Report and

Recommendation is a thoughtful evaluation of the Record.  His findings of fact are detailed

and amply documented.  The parties have failed to demonstrate that any of his factual findings

are "completely devoid" of some credible evidentiary support.  <u>Haines</u>, 975 F.2d at 92.

Accordingly, the Court adopts and affirms the Report and Recommendation's findings of fact.

III.   **OBJECTIONS TO THE CONCLUSIONS OF LAW**

    A.    **Standard of Review**

Federal Rule of Civil Procedure 53(g)(4) provides that "the court must decide <u>de novo</u> all Objections to conclusions of law made or recommended by [the Magistrate Judge]."

    B.    **Unisys's Objections Regarding Breach of Fiduciary Duty**

Unisys raises six legal objections to the Magistrate Judge's conclusion that the company breached its fiduciary duty to Trial Plaintiffs.

    1.    **The Magistrate Judge Did Not Discount the Medical Plan "SPDs"**

First, Unisys argues that the Magistrate Judge erred as a matter of law by "discounting" the Burroughs Medical Plan documents (including the "Summary of Plan Description" or "SPD") in which the company communicated its right to change or terminate the plan. Unisys argues that it cannot be held liable for a breach of fiduciary duty for misrepresenting to employees that their benefits would not be terminated because it repeatedly advised plan participants in writing of its right to alter the benefit plan.

The Third Circuit, however, has ruled in this case "(1) that the SPD did not as a matter of law satisfy Unisys's fiduciary responsibility," and "(2) that . . . [the] trier of fact could conclude that Unisys should have foreseen that its conduct with respect to at least some of the [Sperry] class would cause reasonable employees to rely to their detriment, <u>despite the existence of the SPD</u>." <u>In re: Unisys</u>, 242 F.3d at 508 (emphasis added).

The Magistrate Judge clearly did not ignore or "discount" the reservation of rights provision in the SPD.  Rather, he found that the evidence cited by Unisys failed to "outweigh the affirmative misrepresentations made by the company." Conclusion of Law ("COL") ¶ 34.

Specifically, the Magistrate Judge found that the company knew that its employees were confused about benefits. See Finding of Facts ("FOF") ¶¶ 80, 88, 90. Yet, despite that knowledge, the company misrepresented the cost and duration of retiree medical benefits. It did this while Trial Plaintiffs were making retirement decisions and while it was advising them about the benefits the company would provide during retirement.

Under the legal framework laid out by the Third Circuit, the factual findings of the Magistrate Judge are sufficient to support a breach of fiduciary duty claim. Accordingly, Unisys's first legal objection will be denied.

### 2. The Magistrate Judge Correctly Found that Unisys Made Affirmative Misrepresentations

Second, Unisys argues that the Magistrate Judge erred as a matter of law in concluding that it made affirmative misrepresentations to Trial Plaintiffs because no retiree was promised that his or her medical benefits were "vested," "guaranteed," or "locked in." According to Unisys, Trial Plaintiffs generally were told that they were required to pay $20 per month toward the cost of their participation in the Burroughs Medical Plan until age 65, after which the company would pay the full cost. "Under the terms of the Plan as it existed from 1983 until 1992, such statements were undeniably true." Unisys's Memo. of Law in Support of Objections at 24.

As Unisys points out, "[a]n 'honest statement of belief reasonably grounded in fact does not constitute a misrepresentation.'" Peterson v. American Telephone & Telegraph Co., 127 Fed. Appx. 67, 73 (3d Cir. 2005) (citing Taylor v. Peoples Natural Gas Co., 49 F.3d 982, 990 (3d Cir. 1995)); accord Leuthner v. Blue Cross & Blue Shield of Northeastern Pa., 454

F.3d 120, 129 (3d Cir. 2006) ("A representation is not a misrepresentation if it is an accurate reflection of the plan administrator's intent when the statement was made.").

However, Unisys is accused of purposefully withholding from the plan beneficiaries a full and accurate description of their benefits.  Even when "representations accurately describe[] the terms of [a] Pension Plan, if the representations were made for the purpose of intentionally misleading those considering . . . retirement, then these representations may still give rise to a breach of fiduciary duty under ERISA." Romero v. Allstate Corp., 404 F.3d 212, 227 (3d Cir. 2005); see also Hoxworth v. Blinder, Robinson & Co., 903 F.2d 186, 200 n.19 (3d Cir. 1990) (holding that a misrepresentation may arise from a failure "to disclose sufficient information to render statements actually made not misleading").

The alleged misrepresentations made by Unisys may not have been technically false, but the factual findings of the Magistrate Judge establish that they were nonetheless misleading.  They were misleading because the company failed to qualify adequately the information it supplied regarding the low cost of the Burroughs plan with an acknowledgment that the company could modify or terminate the retirees' medical benefits. The company knew its employees were confused and that this confusion would benefit the company financially.

### 3.    The "Serious Consideration" Test Is Not Applicable Here

Third, Unisys argues that its misrepresentations to Trial Plaintiffs were not material because they were made prior to "serious consideration" by management of the retirement benefit reductions at issue in this case.  Unisys's argument is based on the Third Circuit's decision in Fischer v. Philadelphia Elec. Co., 96 F.3d 1533 (3d Cir. 1996).  In Fischer, the

10

Court held that a plan administrator makes a material misrepresentation when it asserts to employees that it is not considering changing benefits, but actually is seriously considering a change. Id. at 1539. Serious consideration occurs when "(1) a specific proposal (2) is being discussed for purposes of implementation (3) by senior management with the authority to implement the change." Id. Because the benefit changes at issue in this case were not considered seriously by Unisys's senior management until after Trial Plaintiffs already had retired, Unisys argues that the claims should be barred.

The serious consideration test of materiality, however, is not applicable to this case. The test is applicable where "the misrepresentation in question is the statement that no change in benefits is under consideration." Fischer, 96 F.3d at 1538. By contrast, the allegation here is that Unisys told its workers that they would have lifetime medical benefits if they retired by a certain date, when it actually reserved the right to terminate those benefits at any time. The misrepresentations by Unisys are material because "there is a substantial likelihood that it [misled] reasonable employee[s] in making an adequately informed retirement decision." In re: Unisys, 57 F.3d at 1264 (citing Fischer v. Philadelphia Elec. Co., 994 F.2d 130, 135 (3d Cir. 1993)).

> **4.     Trial Plaintiffs' Claims Are Not Barred by the Statute of Limitations**

Fourth, Unisys argues that Trial Plaintiffs' claims are time-barred by ERISA § 413, which bars a breach of fiduciary duty claim that commences "three years after the earliest date

11

on which the plaintiff had actual knowledge of the breach or violation." ERISA § 413(2).[5]  In

order to demonstrate that Trial Plaintiffs' claims are barred by § 413(2), Unisys must meet a

"stringent" standard.  Gluck v. Unisys Corp., 960 F.2d 1168, 1176 (3d Cir. 1992).  The "actual

knowledge" standard "requir[es] not only actual knowledge of the facts giving rise to the

fiduciary violation but also [ ] requir[es] actual knowledge that those facts support a cause of

action under ERISA."  Richard B. Roush, Inc. Profit Sharing Plan v. New England Mut. Life

Ins. Co., 311 F.3d 581, 585 (3d Cir. 2002) ("Roush").

Unisys argues that two events gave Trial Plaintiffs "actual knowledge" of its alleged

breach of fiduciary duty.  First, Unisys argues that by 1989, each of the Trial Plaintiffs

received a supplemental SPD which expressly stated that the company reserved the right to

change or terminate retiree medical benefits.  FOF ¶ 40-42.  The reservation of rights clause,

however, was buried in page twenty-eight of a thirty-nine page booklet.  See Defendant's

Exhibit 4 at 29.  To have discerned a cause of action from receipt of the retiree SPD would

have required an exacting review of the SPD.  This level of "research and scrutiny" is

inconsistent with § 413's actual knowledge standard, particularly in light of the various

affirmative misrepresentations made by the company.  Roush, 311 F.3d at 585-6 (citing Gluck,

960 F.2d at 1179).  Accordingly, the Court finds that the SPD did not impart "actual

knowledge."  29 U.S.C. § 1113.

---

[5]        This is one of two time limitations found in ERISA § 413.  Unisys does not
argue that Trial Plaintiffs' claims are barred by the six-year statute of limitations found in
§ 413(1).

Unisys also argues that a reduction in the level of prescription drug benefits, which was revealed in late 1989, "amounted to an open announcement of the company's right to change or terminate retiree medical benefits," and thus gave Trial Plaintiffs actual knowledge of its alleged breach.[6]  Unisys Memo. of Law in Support of Objections at 39.  Trial Plaintiffs counter that the reduction in prescription drug benefits in 1989 was a minor change and did not give notice that Unisys retained the ability to terminate the benefit plan.

In any event, the Court finds that Unisys's reduction of prescription drug benefits in 1989 does not bar Trial Plaintiffs' claims.  Through stipulations, the parties have agreed that Trial Plaintiffs constructively filed suit on December 3, 1992.  Accordingly, the company must establish that Trial Plaintiffs received notice of the change by December 3, 1989.  The change in benefits did not take effect until January 1, 1990.  Unisys mailed a letter announcing the reduction, but it was not dated.  One Unisys employee testified that the notice was "sent out in November of 1989."  N.T. 10/25/05 at 207.  Another employee testified that a notice was mailed out "near the end of [1989]."  N.T. 10/24/05 at 219.  However, it is not clear from this testimony that any of the Trial Plaintiffs actually received copies of the announcement prior to December 3, 1989.  Accordingly, the Court finds that Unisys has

---

[6] Unisys analogizes the change in prescription drug benefits to the facts of Kurz v. Philadelphia Elec. Co., 96 F.3d 1544 (3d Cir. 1996).  In Kurz, the Third Circuit addressed the failure of PECO to apprise retirement plan participants of the possibility of future plan enhancements under serious consideration at the time of their retirement.  The Kurz beneficiaries alleged that the company affirmatively misrepresented to them that no retirement benefit enhancements were under consideration when they retired. The Third Circuit held that once PECO announced benefit enhancements shortly after the plaintiffs' retirement, all the material elements of a breach of fiduciary duty claim were "patently obvious" to the plaintiffs.  Id. at 1551.

failed to meet the "stringent" standard for establishing that Trial Plaintiffs had actual knowledge of the company's breach of fiduciary duty before December 3, 1989.  Gluck, 960 F.2d at 1176.

### 5.    Trial Plaintiffs Have Standing

Fifth, Unisys argues that Trial Plaintiffs do not have standing to assert their breach of fiduciary duty claims.  The Court disagrees.  "[A]n employee may recover for a breach of fiduciary duty if he or she proves that an employer, acting as a fiduciary, made a misrepresentation that would confuse a reasonable beneficiary about his or her benefits, and the beneficiary acted thereupon to his or her detriment."  Leuthner v. Blue Cross & Blue Shield of Northeastern Pa., 454 F.3d 120, 127-8 (3d Cir. 2006) (citing In re: Unisys, 242 F.3d at 505).  Thus, if Trial Plaintiffs raise "a colorable claim of such a breach and detrimental reliance, then they would have standing because they would have a colorable claim to be eligible for equitable relief under § 502(a)(3)."  Id. at 128.  Here, Trial Plaintiffs have raised a colorable claim for breach of fiduciary duty and their detrimental reliance.  Accordingly, Trial Plaintiffs have standing.

### 6.    Trial Plaintiffs Established Fiduciary Status

Sixth, Unisys argues that certain Trial Plaintiffs failed to establish that misrepresentations were made by someone with fiduciary status because they could not identify who made the alleged misrepresentation to them or they only identified a non-fiduciary supervisor.  To prove a breach of fiduciary duty claim, a plaintiff must establish that the alleged communication was made by an authorized fiduciary.  See Daniels v. Thomas & Betts Corp., 263 F.3d 66, 73 (3d Cir. 2001).  Under ERISA, a fiduciary is any person who

14

"exercises any discretionary authority or discretionary control respecting management of such plan or . . . has any discretionary authority or discretionary responsibility in the administration of such plan." 29 U.S.C. § 1002(21)(A).  Unisys acted as plan administrator in making the communications to Trial Plaintiffs that are the basis of their claims of breach of fiduciary duty.  "[W]hen a plan administrator explains plan benefits to its employees, it acts in a fiduciary capacity."  In re: Unisys, 57 F.3d at 1261 n.10.

Trial Plaintiffs contend that when various human resources staff members and/or supervisors communicated with them about retiree medical benefits, they were functioning as ERISA fiduciaries.  For an individual to qualify as an ERISA fiduciary, he or she must have actual or apparent authority to advise the company's employees of their rights under the plan at issue.  Taylor v. Peoples Natural Gas Co., 49 F.3d 982, 988-89 (3d Cir. 1995).

Apparent authority "(1) 'results from a manifestation by a person that another is his agent' and (2) 'exists only to the extent that it is reasonable for the third person dealing with the agent to believe that the agent is authorized.'"  Taylor, 49 F.3d at 989 (quoting Restatement (Second) of Agency § 8 cmts. a & c (1958)).  Furthermore, "apparent authority arises in those situations where the principal causes persons with whom the agent deals to reasonably believe that the agent has authority."  Id. (internal quotations and citations omitted).

The factual findings of the Magistrate Judge establish that the company's agents had apparent or actual authority as ERISA fiduciaries.  First, the Magistrate Judge found that the company delegated to the human resources staff and other managers the function of advising employees about benefits.  Second, he credited the testimony of each individual Trial Plaintiff

that he or she was advised by either a member of the human resources staff or a supervisor about the cost and duration of retiree medical benefits.  See, e.g., FOF ¶¶ 80, 82-85.  Third, he found that the communications at issue were made by company representatives in the context of assisting Trial Plaintiffs with gathering information about retiree benefits, and were made at the time that each Trial Plaintiff was contemplating specifically his or her financial ability to retire.  See FOF ¶¶ 91 - 372.  Under these circumstances, it was reasonable for Trial Plaintiffs to believe that Unisys's agents had authority to advise them regarding benefits.

While some Trial Plaintiffs could not name the Unisys agent who advised them, the Magistrate Judge nevertheless found that each of these Trial Plaintiffs "spoke with a member of the human resources department regarding retiree benefits and that such meetings formed the basis of their understanding as to the cost and duration of the benefits."  COL ¶ 8.  Despite this finding, Unisys argues that as a matter of law the claims of these Trial Plaintiffs must fail because it has been denied the "opportunity to call the alleged speaker as a witness or present other witnesses who could refute the speaker's alleged fiduciary status."  Unisys Memo. of Law in Support of Its Objections at 44-45.

The issue, however, is whether Trial Plaintiffs have proven that a fiduciary made misrepresentations to them, not whether they are able to remember names.  The Magistrate Judge found that, despite Trial Plaintiffs' inability to identify the speakers, other evidence led to the conclusion that authorized members of Unisys's human resource staff did counsel Trial Plaintiffs about retiree medical benefits.  Accordingly, Trial Plaintiffs established fiduciary status.

16

Defendant also contends that the misrepresentation claims of certain Trial Plaintiffs fail as a matter of law because the communications at issue were made by supervisors who did not have authority to speak on behalf of the company regarding benefits. Again, however, there is no rule that a supervisor cannot act as a fiduciary. Based on the facts found by the Magistrate Judge, it was reasonable for certain Trial Plaintiffs to believe that their supervisors were acting on the company's behalf and within the scope of their authority as agents of the company when advising them about the cost and duration of their retiree medical benefits. In light of these findings, the Magistrate Judge did not err in concluding that certain of the Trial Plaintiffs' supervisors had apparent authority to advise them regarding their retirement benefits.

**C.    The Parties' Objections Regarding Detrimental Reliance**

Unisys argues that the Magistrate Judge's finding that Trial Plaintiffs detrimentally relied on its misrepresentations is erroneous because there is inadequate support in the record for such a conclusion. To prevail, each Trial Plaintiff was required to prove that he or she relied upon the claimed misrepresentation or omission to his or her detriment. See, e.g., Daniels, 263 F.3d at 73; Burstein v. Ret. Acct. Plan for Employees of Allegheny Health Educ. and Research Found., 334 F.3d 365, 387 (3d Cir. 2003). A decision to retire is a sufficient form of reliance in an ERISA fiduciary breach action. In re: Unisys, 242 F.3d at 507. Furthermore, other forms of reliance can form a valid basis for relief. Id. ("[W]e decline Unisys' invitation to adopt an across the board prohibition of relief based upon reasonable reliance in contexts other than retirement decisions.").

17

The Magistrate Judge found that 12 of the 14 Trial Plaintiffs ("Prevailing Plaintiffs") established that they detrimentally relied on Unisys's misrepresentations. These conclusions were based on specific factual findings. For example, the Magistrate Judge credited Trial Plaintiff Stringer's testimony that she would not have retired when she did, and that she would have continued working at Unisys until age sixty-five, but for Unisys's misrepresentations. FOF ¶202. She also would not have installed a swimming pool in her home or helped her granddaughter purchase a home. Id. Likewise, the Magistrate Judge credited the testimony of Trial Plaintiff Yeager that if he had known that Unisys had the right to change or terminate the Burroughs Plan at any time, he would not have retired until age sixty-five and that "participation in the Burroughs Plan was the most significant consideration in his decision to retire at the time he did." FOF ¶262. As these examples demonstrate, the factual findings of the Magistrate Judge sufficiently support the conclusion that Prevailing Plaintiffs detrimentally relied on Unisys's misrepresentations.

Similarly, despite Trial Plaintiffs' objections, the Magistrate Judge correctly concluded that Trial Plaintiffs Walnut and DiLoreto failed to establish detrimental reliance. DiLoreto testified that she refused an offer to return to work in January 1987 because she was assured her retiree medical benefits were guaranteed. This evidence, however, was undermined by the fact that Unisys permanently terminated DiLoreto in 1986 as part of an involuntary layoff in her department. FOF ¶94. Furthermore, her testimony regarding the circumstances surrounding the alleged offer to return to work was vague. FOF ¶104. Accordingly, the Magistrate Judge did not err by refusing to credit her testimony.

The same conclusion applies to Trial Plaintiff Walnut.  Walnut testified that he relied on Unisys's misrepresentations in making his retirement decision.  FOF ¶ 142.  However, his testimony was undermined by the undisputed fact that he retired pursuant to a Settlement Agreement that resolved a lawsuit he brought against Unisys.  The Settlement Agreement contained an integration clause that stated it contained the "entire agreement" of the parties and it did not promise lifetime benefits.  Id.  Accordingly, the Magistrate Judge did not err by refusing to credit his testimony.

>   **D.**   **The Parties' Objections Regarding Remedies**

>     **1.**    **Unisys's Objections**

The Prevailing Plaintiffs' breach of fiduciary duty claims are brought pursuant to ERISA § 502(a)(3), which states in pertinent part:

>> A civil action may be brought - -
>> (3) by a participant, beneficiary, or fiduciary (A) to enjoin any act or practice which violates any provision of this subchapter or the terms or the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce the provisions of this subchapter or the terms of the plan.

29 U.S.C. § 1132(a)(3).

The Magistrate Judge recommended (1) that Unisys be ordered to provide retiree medical benefits to Prevailing Plaintiffs under a reconstituted medical plan, and (2) that the benefit plan be reformed to remove Unisys's right to reduce or terminate benefits.  Unisys argues that the Magistrate Judge erred because these remedies are not "appropriate equitable relief."  29 U.S.C. 1132(a)(3).  Indeed, Unisys's position is that Trial Plaintiffs, even if they prove a breach of fiduciary duty, are entitled to no remedy whatsoever.

Unisys first argues that the Magistrate Judge erred in recommending reformation to remove its right to terminate or reduce benefits in a reconstituted plan because the doctrine of reformation is "available only to correct a fraud or mistake in the plan document arising <u>prior to</u> the preparation of the document."  Unisys's Memo. in Support of Objections at 30 (emphasis in original).  In other words, the company argues that reformation is available exclusively when the parties come to an agreement, "but by fraud or mistake write it down in some fashion that does not truly reflect their contract."  Dobbs, Law of Remedies, § 4.3(7), at 617 (2d ed. 1993) ("Dobbs").  Here, Unisys claims that reformation is impossible because it always fully intended to reserve the right to reduce or terminate the retiree's medical benefits.

The Court need not reach this argument.  Rather than reform the benefit plan, the Court will modify the Report and Recommendation to permanently enjoin Unisys from reducing or terminating the retirees' benefits in the reconstituted Plan.[7]   Since Trial Plaintiffs were assured that their benefits would not be terminated or reduced, Unisys will be enjoined from reducing or terminating their reinstated benefits.  This remedy is within the equitable powers of the Court pursuant to ERISA § 502(a)(3).  29 U.S.C. § 1132(a)(3) ("A civil action may be brought . . . to enjoin any act or practice . . . .").

In this context, the Court is mindful of the Third Circuit's dicta in <u>In re: Unisys</u>, 57 F.3d 1255.  There, the Court stated that "an injunction ordering specific performance of the assurances Unisys made" and "restitutionary reimbursement for back benefits" were remedies that were equitable in nature, and thus available under ERISA § 502(a)(3).  <u>Id.</u> at 1269.  As

---

[7] Reformation, as opposed to an injunction, would be necessary only if the Court sought to award money damages for breach of the reformed contract.  <u>See</u> Dobbs § 4.3(7), at 618.

discussed infra, intervening Supreme Court precedent has clarified that "restitutionary reimbursement" can no longer be considered an equitable remedy.  There is, however, no similar reason to doubt that an "injunction ordering specific performance of the assurances Unisys made" to the retirees is permissible under ERISA § 502(a)(3).

Unisys next argues that compelling it to carry out its assurances violates the ERISA principles that (1) employers have the general ability to define the terms of their plans and (2) a formal ERISA plan document should be given "primacy."  These arguments have been considered and rejected by the Third Circuit.  As discussed supra, the Third Circuit has held that Unisys permissibly could terminate the benefits of its retirees.  This was in explicit recognition of Unisys's general ability to define the terms of its plans, and because of the importance of the reservation of rights provisions in the plan documents.  In re: Unisys, 58 F.3d at 904-05, 908.  However, the Third Circuit allowed claims for breach of fiduciary duty against Unisys and, if these claims were proven, suggested that equitable relief would be appropriate.  In re: Unisys, 57 F.3d at 1269.

**2.     Trial Plaintiffs' Objections to the Denial of Monetary Damages**

In addition to seeking an injunction forcing Unisys to resurrect the Burroughs Plan, Prevailing Plaintiffs seek recovery of back wages and pension benefits, medical premiums paid to the Unisys Plan, medical premiums paid for other medical insurance, and other losses they allegedly incurred, under a claim for restitution.  They also request payment representing the amount Unisys financially gained as a result of their decision to retire.

The Magistrate Judge correctly denied these claims because they are not "appropriate equitable relief."  29 U.S.C. § 1132(a)(3).  In Great-West Life & Annuity Ins. Co. v. Knudson, 534 U.S. 204 (2002) ("Knudson"), the Supreme Court reaffirmed that only equitable relief may be obtained for a breach of fiduciary duty under ERISA § 502(a)(3).  "Equitable relief" under § 502(a)(3) refers to "those categories of relief that were typically available in equity."  Id. at 210 (quotations omitted).  Accordingly, the question presented here is whether the restitution sought by Trial Plaintiffs typically was available in equity.

In Knudson, the Supreme Court held that restitution, a remedy that it previously had regarded as equitable, exists in two forms: legal restitution and equitable restitution.  Only the latter form of restitution is available under § 502(a)(3)(B).  Id. at 212-13 ("[N]ot all relief falling under the rubric of restitution is available in equity . . . [R]estitution is a legal remedy when ordered in a case at law and an equitable remedy . . . when ordered in an equity case.") (internal quotation marks and alterations omitted).

"The line separating legal from equitable [restitution] is more nice than bright."  Dastgheib v. Genentech, Inc., 457 F. Supp. 2d 536, 541 (E.D. Pa. 2006) (citations omitted).  The distinction, according to the Supreme Court, turns on the following:

In cases in which the plaintiff "could not assert title or right to possession of particular property, but in which nevertheless he might be able to show just grounds for recovering money to pay for some benefit the defendant had received from him," the plaintiff had a right to restitution at law through an action derived from the common-law writ of assumpsit.  Dobbs § 4.2(1), at 571 (2d ed. 1993) . . . In such cases, the plaintiff's claim was considered legal because he sought "to obtain a judgment imposing a merely personal liability upon the defendant to pay a sum of money." Restatement of Restitution § 160, Comment a, pp. 641-642 (1936).

\***

In contrast, a plaintiff could seek restitution in equity, ordinarily in the form of a constructive trust or an equitable lien, where money or property identified as belonging in good conscience to the plaintiff could clearly be traced to particular funds or property in the defendant's possession.  See Dobbs § 4.3(1), at 587-588; Restatement of Restitution, supra, § 160, Comment a, at 641-642; 1 G. Palmer, Law of Restitution § 1.4, p. 17; § 3.7, p. 262 (1978).  A court of equity could then order a defendant to transfer title (in the case of the constructive trust) or to give a security interest (in the case of the equitable lien) to a plaintiff who was, in the eyes of equity, the true owner.  But where "the property [sought to be recovered] or its proceeds have been so dissipated so that no product remains, [the plaintiff's] claim is only that of a general creditor," and the plaintiff "cannot enforce a constructive trust of or an equitable lien upon other property of the [defendant]." Restatement of Restitution, supra, § 215, Comment a, at 867.  Thus, for restitution to lie in equity, the action generally must seek not to impose personal liability on the defendant, but to restore to the plaintiff particular funds or property in the defendant's possession.

Knudson, 534 U.S. at 213-14 (last three alterations in original).

Put simply, "'equitable relief' under § 502(a)(3)(B) is to be construed by reference to the types of relief typically available in equity, and courts are to analyze the underlying nature of the claim and relief requested by a plaintiff in order to determine whether that relief had been typically available in equity." Skretvedt v. E.I. Dupont de Nemours, 372 F.3d 193, 211 (3d Cir. 2004).  Restitution typically was available in equity "where money or property identified as belonging in good conscience to the plaintiff could clearly be traced to particular

funds or property in the defendant's possession." <u>Knudson</u>, 534 U.S. at 213 (citing multiple treatises) (emphasis added).

The Magistrate Judge concluded that the restitution sought by Trial Plaintiffs could not be considered a request for equitable restitution.  As the Magistrate Judge correctly noted, "Prevailing Plaintiffs' claims . . . would be paid from the general funds of Defendant and not from identifiable property held by Defendant that could be traced from Prevailing Plaintiffs to Defendant."  COL ¶ 77.

In their Objections, Trial Plaintiffs acknowledge that <u>Knudson</u> sharply limited the award of money damages through equitable relief.  <u>Knudson</u>, 534 U.S. at 210 ("almost invariably . . . suits seeking (whether by judgment, injunction, or declaration) to compel the defendant to pay a sum of money to the plaintiff . . . [seek] legal relief") (quotations and alterations omitted).  They argue, however, that the equitable remedies of "constructive trust" and "accounting for profits" permit them to recover money damages.  They also argue that all relief to remedy a breach of fiduciary duty is equitable.

     a.    **Constructive Trust**

First, Trial Plaintiffs argue that they should be able to recover money damages through the remedy of a constructive trust.  They argue that even if they must trace the money they seek to a particular fund or asset in the possession of Unisys, the Magistrate Judge read this "tracing" requirement too strictly.  Rather than identifying particular property, Trial Plaintiffs argue that they must "simply . . . identify in the defendant's possession 'something,'" including money, "which it would be unjust for the defendant to retain."  Trial Plaintiffs' Reply Memo. in Support of Objections at 24.  According to Trial Plaintiffs, once this

requirement is satisfied, a plaintiff then must identify only some section of the defendant's general assets, such as a payroll account, that "benefitted" from the unjust action toward the plaintiff.

The Court disagrees.  Trial Plaintiffs' view of equitable relief runs counter to the explicit language in Knudson that a constructive trust only can be placed on "particular funds or property in the defendant's possession" that are "clearly" traced to the plaintiff.  534 U.S. at 213 (emphasis added).  Simply designating some portion of Unisys's general funds is not enough.  Indeed, since they cannot identify the particular property that belongs to them, Trial Plaintiffs are seeking the same relief as every claimant who seeks monetary damages: money that they believe belongs to them.  See Dobbs § 2.6(3), at 157 ("If no particular property is identified as belonging to plaintiff in equity and good conscience, the plaintiff's claim for money restitution looks like an ordinary claim for a money judgement.").

### b.    Accounting for Profits

Second, Trial Plaintiffs argue that even if the Magistrate Judge correctly found that they cannot prove an entitlement to specific funds or property in Unisys's possession, they should be awarded monetary relief through the equitable remedy of an accounting for profits. In Knudson, the Supreme Court did acknowledge that an accounting for profits is a form of equitable restitution that is outside the general rule that an equitable action must not seek to impose personal liability on the defendant.  534 U.S. at 214 n.2.  "If, for example, a plaintiff is entitled to a constructive trust on particular property held by the defendant, he may also recover profits produced by the defendant's use of that property, even if he cannot identify a particular res containing the profits sought to be recovered."  Id (citations omitted).

25

Before a plaintiff may account for profits, however, he must, as with a constructive trust, first identify "<u>particular</u> funds or property in the defendant's possession" that belongs in good conscience to him.  <u>Id.</u> at 213 (emphasis added); <u>see also</u> Dobbs § 4.3(2), at 588 (2d ed. 1993) ("Accounting for profits carries the constructive trust idea over to cases in which the property subject to a constructive trust produces profit or income.").  Thus, for example, if a plaintiff can identify a specific tract of land that has been held wrongfully and rented out by the defendant to a third party, he may seek equitable control over the property, as well as an accounting for the profits (i.e. the rent) that the defendant earned off the land.  These profits are recoverable, even if a defendant has dissipated the actual rent profits into its general funds.  <u>Knudson</u>, 534 U.S. at 214 n.2.

Here, for the same reason that Trial Plaintiffs cannot claim a constructive trust, they cannot claim an accounting for profits.  Plaintiffs have failed to identify a specific fund or property from which they are entitled to the profits.  Therefore, an accounting for profits is not an appropriate equitable remedy in this case.

### c.    Equitable Relief Requires an Equitable Remedy

Finally, Trial Plaintiffs argue that they are entitled to money damages because this is a breach of fiduciary duty case, and courts of equity traditionally had the power to award any remedy, including monetary relief, in such cases.  Therefore, they argue, monetary relief in a breach of fiduciary duty case is "appropriate equitable relief" under  ERISA § 502(a)(3).

Trial Plaintiffs are correct that under the common law of trusts, which underlies ERISA's fiduciary provisions, "the remedies of a beneficiary against the trustee are exclusively equitable." Restatement (Second) of Trusts § 197 at 433.  It does not follow, however, that all forms of relief

against a fiduciary are equitable under ERISA § 502(a)(3).  "There are two distinct tests for determining equitable status today.  First a claim could be deemed equitable if it sought a coercive remedy . . . . Second, a claim could be deemed equitable if the plaintiff sought to enforce a right that was originally created in the equity courts . . . ."  Dobbs § 2.6(3), at 155.

The Supreme Court has held that, for purposes of ERISA § 502(a)(3), the first test, which focuses on the nature of the remedy, is determinative.  <u>Knudson</u>, 534 U.S. at 219 ("[We reject] the claim that the special equity-court powers applicable to trusts define the reach of § 502(a)(3)."); <u>Mertens v. Hewitt Assoc.</u>, 508 U.S. 248, 257-58 (1993) ("Since all relief available for breach of trust could be obtained from a court of equity, limiting the sort of relief obtainable under § 502(a)(3) to 'equitable relief' in the sense of 'whatever relief a common-law court of equity could provide in such a case' would limit the relief not at all.  We will not read the statute [this way].").  Thus, even though Trial Plaintiffs seek remedies for the breach of a fiduciary duty, the monetary relief they seek is not "appropriate equitable relief" under ERISA § 502(a)(3).

## IV.    Conclusion

For the reasons stated above, the parties' Objections to Magistrate Judge Rueter's Report and Recommendation will be denied and the Report and Recommendation will be approved and adopted in part and modified in part.

### IN THE UNITED STATES DISTRICT COURT
### FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| IN RE: UNISYS CORPORATION | : | MDL DOCKET |
| RETIREE MEDICAL BENEFITS ERISA | : | |
| LITIGATION | : | NO. 969 |
| | | |
| ADAIR, HARLEY, J., et al. | : | CIVIL ACTION |
| | : | |
| v. | : | NO. 03 - 3924 |
| | : | |
| UNISYS CORPORATION | : | |

### ORDER

**AND NOW**, this        16th        day of July, 2007, upon consideration of the Report

and Recommendation of United States Magistrate Judge Thomas J. Rueter and review of the

accompanying Record, and after considering the parties' Objections pursuant to Fed. R. Civ.

P. 53, it is hereby **O R D E R E D** that:

1. The Report and Recommendation is **APPROVED** and **ADOPTED** in part and

**MODIFIED** in part.

2. Plaintiffs' request for injunctive relief is **GRANTED** as follows:

Within sixty (60) days of the date of this Order:

(a) Unisys Corporation ("Unisys") shall restore the benefits that were applicable

to Plaintiffs Gallagher, Peterman, Castorani, Geneva, Stringer, Hansell, Yeager,

Ginsberg, Horshaw, Botzum, Endress and Schieman ("Prevailing Plaintiffs")

under the Burroughs Post-Retirement Medical Plan (the "Burroughs Plan")

before Unisys terminated the plan;

(b) Unisys and the Burroughs Plan shall be enjoined from exercising any provision of the Plan to (i) terminate the Burroughs Plan with respect to Prevailing Plaintiffs, or (ii) require Prevailing Plaintiffs to pay premiums after age sixty-five for medical coverage under the restored Burroughs Plan.

(c) Unisys shall reinstate the Burroughs Plan with these conditions or create a new plan identical to the Burroughs Plan with these conditions.

3. Judgment is hereby entered:

(a) In favor of Prevailing Plaintiffs and against Unisys on their claims; and

(b) In favor of Unisys and against Plaintiffs DiLoreto and Walnut on their claims.

**BY THE COURT:**

 / s/  Bruce W. Kauffman
**BRUCE W. KAUFFMAN, J.**